UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

TERRI S. O'NEAL, individually
and as successor-in-interest
to the Estate of BENJAMIN L.
BRATT; BARRY M. BRATT,
individually,

        Plaintiffs,

   v.

SMITHKLINE BEECHAM CORPORATION
d/b/a GLAXOSMITHKLINE, a
Pennsylvania Corporation; and
DOES 1-50,

        Defendants.

NO. CIV S-06-1063 FCD/DAD

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on plaintiffs Terri O'Neal and Barry Bratt's ("plaintiffs") motion for reconsideration of the court's January 30, 2008 order (the "Order"), granting summary judgment for defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK") on the ground plaintiffs' instant action is preempted by federal law.[1]  In their present motion,

---

[1] Because the court finds that oral argument will not be material assistance, it orders this matter submitted on the briefs.  E.D. Cal. L.R. 78-230(h).

plaintiffs fail to demonstrate how the court erred or rendered a manifestly unjust decision in finding that the Federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, and its implementing regulations, preempt plaintiffs' state law claims. In opposing summary judgment, a "non-moving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint." (Order at 16-17.) Plaintiffs failed to proffer such evidence in opposing GSK's motion for summary judgment (Order at 28-29), and their motion for reconsideration cannot and does not remedy this critical defect.

Moreover, in large part, plaintiffs use their motion for reconsideration as a vehicle to resubmit arguments already presented to the court[2] and explicitly addressed in the Order. After review of the parties' voluminous submissions and lengthy oral argument, the court considered and rejected these very arguments, finding a direct conflict between the FDCA and plaintiffs' state law claims. Plaintiffs' vigorous position to

---

[2] For example, plaintiffs reargue: (1) Prior to 1997, GSK should have warned of an increased risk of suicidality based on adult data in Paxil's original NDA clinical studies (Compare Pls.' Mot. for Reconsid. ["Pls.' Mot."], filed Feb. 13, 2008 [Docket #181-2], at 2, 4, 7, 15 with Pls.' Opp'n to GSK's Mot. Summ. J. ["Pls.' Opp'n"], filed Nov. 13, 2007 [Docket #142], at 3, 8, 11, 25); (2) Prior to 1997, GSK should have warned of an increased risk of suicidality based on case reports relating to Study 329 (Compare Pls.' Mot. at 3, 6-8 with Pls.' Opp'n at 8-9); (3) FDA never considered and rejected whether an increased risk of suicidality existed prior to 1997 (Compare Pls.' Mot. at 8-9 with Pls.' Opp'n at 1, 9-10); and (4) There is only a hypothetical conflict in this case because "it is completely speculative to assume that [Paxil] would have been deemed misbranded or that the FDA would have initiated enforcement action" (Compare Pls.' Mot. at 9-12 with Pls.' Opp'n at 4, 13, 26 n.28).

2

the contrary, based on rehashed arguments, does not provide grounds for reconsideration.

Finally, for the first time, plaintiffs argue their state law claims, for negligence, strict products liability, breach of express warranty, fraud and negligent infliction of emotional distress, are not based solely on Paxil's labeling and a failure-to-warn theory.  Plaintiffs contend these claims also stand alone as five substantive causes of action that are wholly unrelated to the adequacy of Paxil's labeling.  Plaintiffs did not raise this argument in opposition to GSK's motion and may not raise it for the first time only now.  Moreover, even were the court to consider the argument, the allegations of the complaint do not support plaintiffs' position.  All of plaintiffs' claims are fundamentally derived from their contention GSK failed to properly warn plaintiffs through Paxil's labeling.  Because federal law preempts this essential theory, all of plaintiffs' claims necessarily fail.

For all of these reasons, the court finds no grounds to reconsider its Order, and hereby DENIES plaintiffs' motion for reconsideration.

**STANDARD**

Where the court's ruling has resulted in a final judgment or order, a motion for reconsideration may be based either on Rule 59(e) (motion to alter or amend judgment) or Rule 60(b) (motion for relief from judgment) of the Federal Rules of Civil Procedure.  See School Dist. No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1262 (9th Cir. 1993).  Because plaintiffs' motion was filed within ten days after entry of dismissal, the

motion is properly considered under Rule 59(e).  Fed. R. Civ. P. 59(e) (requiring that all motions submitted pursuant to this rule be filed no later than 10 days after entry of judgment).[3]

Absent "highly unusual circumstances," reconsideration of a final judgment is appropriate only where (1) the court is presented with newly-discovered evidence, (2) the court committed "clear error or the initial decision was manifestly unjust," or (3) there is an intervening change in the controlling law. School Dist. No. 1J, Multnomah County, 5 F.3d at 1263; Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003) (recognizing a motion for reconsideration is an extraordinary remedy that should not be granted absent highly unusual circumstances).

In the absence of new evidence or a change in the law, as is the case here, a party may not use a motion for reconsideration to present new arguments or claims not raised in the summary judgment motion.  See 389 Orange Street Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999); Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) ("Rule 59(e) . . . may

---

[3] Plaintiffs also cite Rule 60(b) as a basis for their motion, but they do not discuss the standards thereunder.  The standards are, however, akin to the standards for Rule 59(e). See Fed. R. Civ. P. 60(b)(6) (providing that a court may relieve a party from judgment for "any other reason that justifies relief"); Fantasyland Video, Inc. v. County of San Diego, 505 F.3d 966, 1005 (9th Cir. 2007) (recognizing courts use this provision sparingly as an equitable remedy to prevent manifest injustice where extraordinary circumstances are present).  The court assumes plaintiffs believe their argument that the court committed legal error constitutes an "extraordinary circumstance" under Rule 60(b)(6).  But see Plotkin v. Pac. Tel. and Tel. Co., 688 F.2d 1291, 1293 (9th Cir. 1982) (holding that a party may not resort to Rule 60(b) to remedy a perceived legal error in lieu of filing an appeal as "legal error does not by itself warrant the application of Rule 60(b) . . . [since] the correction of legal errors committed by district courts is the function of the Court of Appeals, and can usually be remedied on appeal.")

4

not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation"). Similarly, a court does not err in declining to reconsider claims never plead in the complaint. See 389 Orange Street, 179 F.3d at 665. Ultimately, a party seeking reconsideration must show "more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." United States v. Westlands Water Dist., 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001).

**ANALYSIS**

Plaintiffs argue the court committed two primary errors in granting summary judgment for GSK on preemption grounds: (1) the court improperly applied the summary judgment standards by "weighing" the subject evidence and thereby usurping the role of the jury; and (2) the court improperly dismissed plaintiffs' claims, as they were alternatively plead on theories and facts unrelated to a failure to warn based on Paxil's labeling. The court addresses these arguments in turn.[4]

---

[4] As set forth above, the court does not consider here many of the substantive arguments raised by plaintiffs in their motion. See n. 2 supra. These arguments were previously raised by plaintiffs in opposition to GSK's motion for summary judgment, were considered by the court, and ultimately rejected by the court. Plaintiffs' apparent "disagreement" with the court's findings and re-arguments to the contrary do not provide grounds for reconsideration. Westlands Water Dist., 134 F. Supp. 2d at 1131.

**1.   Sufficiency of Plaintiffs' Proffered Evidence**

Citing to Dr. Glenmullen's opinions regarding adult suicidality data and Study 329, plaintiffs argue the court "failed to construe all evidence in the light most favorable to Plaintiffs and failed to draw all reasonable inferences in the Plaintiffs' favor." (Pls.' Mot. at 13.)  As reflected in the Order, the court did not, as plaintiffs suggest, "weigh" the evidence and usurp the jury's role.  Rather, plaintiffs simply failed to produce evidence demonstrating a genuine issue for trial that reasonable evidence of an increased risk of suicidality in pediatric patients existed prior to Benjamin Bratt's death in February 1997.  (Order at 31.)

Specifically, with respect to the 1989/1991 data from the NDA clinical studies, the court found that even assuming the data showed an increased risk of suicidality in adults,[5] plaintiffs failed to produce any evidence that the adult data was translatable to pediatrics.  (Order at 29.)[6]  As for Study 329,

---

[5]   As detailed in the Order, the FDA made precisely the contrary finding, at the time, with respect to both the adult and pediatric populations.

[6]   Plaintiffs are not, as they argue in their motion, simply entitled to a "reasonable inference" that the adult data allegedly demonstrating an increased risk is translatable to the pediatric population.  See Richards v. Neilson Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987) ("It is the record made on summary judgment that controls, not the record plus speculative inferences a trier of fact might add; and the only inferences permitted from the summary judgment record itself are those that are reasonable given the substantive law which is the foundation for the claim or defense.") Plaintiffs must on summary judgment proffer admissible evidence of the same.  See Sisco v. California, 2007 WL 1470145, at *8 (E.D. Cal. May 18, 2007) ("Inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the
(continued...)

the court found plaintiffs failed to present evidence GSK became aware of the final results of the study prior to Benjamin's death. (Id.) In sum, plaintiffs failed to produce evidence sufficient to raise a triable issue of fact of an association between Paxil and an increased risk of suicidality in pediatric patients until, at the earliest, late 2004 when FDA completed its analysis of data from several antidepressants. (Id. at 30 n.19, 31). The court concluded it could not find "on the evidence proffered by plaintiffs, that such evidence [of a potential association of suicidality] existed prior to Benjamin's death in February 1997. In fact, the evidence submitted by GSK suggests the contrary." (Id. at 19.)

Nothing offered by plaintiffs on the instant motion persuades the court to conclude otherwise. With respect to the 1989/1991 NDA clinical studies, plaintiffs simply rely on Dr. Glenmullen's conclusory statement that an adult warning would have prevented Benjamin Bratt's death. However, the record is abundantly clear, neither Dr. Glenmullen or plaintiffs' other experts offered testimony sufficient to show that the *adult* data available to GSK prior to February 1997 was translatable to the pediatric population such that GSK was aware or should have been aware of an increased risk of suicidality in *pediatric* patients. (Order at 29.)[7]

---

[6](...continued)
inference may be drawn . . . to demonstrate a genuine issue.")

[7] To the extent plaintiffs cite certain testimony of Dr. Glenmullen, provided in a November 2007 deposition, which took place after plaintiffs filed their opposition to GSK's motion for (continued...)

7

Plaintiffs' reliance on <u>In re Phenylpropnolamine Prods. Liab. Litig.</u>, 289 F. Supp. 2d 1230 (W.D. Wash. 2003) is both unpersuasive and untimely, as they failed to raise the case in opposition to GSK's motion.  Importantly, <u>In re Phenylpropnolamine</u> did not involve a preemption issue; rather, the court dealt with a <u>Daubert</u> motion involving an over-the-counter ("OTC") drug that was on the market prior to the promulgation of FDA's regulations governing OTC drugs.  The defendants attempted to strike the plaintiffs' experts from testifying that the studies (predominantly relating to adult women) could be extrapolated to demonstrate a risk in children. <u>Id.</u> at 1244.  The plaintiffs argued, via "case reports, textbooks, and other medical literature," that extrapolation is appropriate.  <u>Id.</u> at 1245.  Thus, the court only addressed whether certain adult data can be extrapolated for establishing causation.  <u>Id.</u> at 1244-46.

With respect to Study 329, plaintiffs continue to argue that adverse events that occurred during Study 329 should have prompted GSK to include a warning for increased suicidality in the Paxil labeling. (<u>Compare</u> Pls.' Mot. at 3, 6-8 with Pls.'

---

[7](...continued)
summary judgment, the court does not consider this evidence as plaintiffs proffer no reason why they did not supplement the record to provide the court with this "evidence" earlier.  <u>Kona</u>, 229 F.3d at 890.  Moreover, the court notes that even were it to consider this additional testimony of Dr. Glenmullen, it would not provide a basis for reconsideration.  This November 2007 testimony still falls short of providing sufficient evidence to raise a triable issue of fact as to whether GSK was aware of reasonable evidence of an increased risk of suicidality in *pediatric* patients.  (See Pl.'s Mot. at 7 n.5 [citing testimony].)

8

Opp'n at 8-9.) The court concluded that "GSK could not have known whether the study revealed a reasonable association of any risk for pediatric patients until after Benjamin's death in February 1997." (Order at 29.) In its Order, the court addressed the key, undisputed facts regarding Study 329 which established that the results of the study were unavailable to GSK until after Benjamin's death. (Order at 29-30 n. 18 [emphasizing that plaintiffs' own expert, Dr. Glenmullen, based his findings regarding an increased suicidality risk in pediatrics on the "Final Clinical Report on Study 329" which was completed on *November 24, 1998,* over a year after Benjamin's death].) Plaintiffs proffer nothing to the contrary now.

Instead, plaintiffs continue to argue that GSK could have broken the blind on Study 329, and the isolated events reported to GSK prior to the conclusion of the study warranted a labeling change. As support, plaintiffs again cite case law not raised in opposition to GSK's motion. See McNeil v. Wyeth, 462 F.3d 364 (5th Cir. 2006). However, even were the court to consider this out-of-circuit authority, it is not dispositive of the issue here. In McNeil, the court determined the drug's extensive off-label use created the duty to warn; here, there was simply no evidence proffered by plaintiffs that prescriptions of Paxil to pediatric patients made up the majority of Paxil sales. Thus, there would be no basis to invoke the McNeil court's duty to warn. Id.

Plaintiffs also continue to incorrectly insist that any "possibly harmful adverse effect" must be included in a drug's

9

labeling, and that a drug company must warn if the risk could result in death regardless of the data tying the risk to the drug." (Pls.' Mot. Reconsid. at 6-7.)  Plaintiffs misapply the applicable federal law; an "effect" may only be included in the labeling if it is determined that there is "reasonable evidence of an association" between the use of the medication and the adverse event.  See 39 Fed. Reg. 33229, 33232 (Sept. 16, 1974) ("The presence of unsubstantiated medical opinion in drug labeling would be misleading within the meaning of sections 502(a) and 201(n) of the act."); 40 Fed. Reg. 28582, 28583 (July 7, 1975) ("[S]tatements about the safety or effectiveness of a drug must be based upon adequate scientific evidence."). Further, the regulation upon which plaintiffs rely actually supports GSK's position in this case.  See 44 Fed. Reg. at 37447 ("[T]he decision as to whether a warning is legally required for the labeling of a drug must rest with [FDA].").  Under federal law, GSK could not have included a warning for suicidality based on this data because FDA repeatedly and consistently found that before February 1997 there was insufficient scientific evidence to support the plaintiffs' warning.

At bottom, plaintiffs' motion is based on their *disagreement* with the court's ruling.  As noted, such disagreement is not grounds for reconsideration and does not demonstrate "clear error" by the court:

> Plaintiffs assert, with great vehemence and a degree of disdain, that they disagree with the court's findings. This is not grounds for the grant of reconsideration. Plaintiffs advanced arguments in their motion for reconsideration identical to the arguments they advanced in their opposition to defendants' motion for summary judgment.  The court found these arguments unpersuasive

10

>then and unpersuasive now.  In sum, plaintiffs simply offer no new evidence or legal support for their contention the court committed clear error.

Hansen v. Schubert, 459 F. Supp. 2d 973, 998 (E.D. Cal. 2006).  Such is also the case here.

### 2. **Alternative Bases for Plaintiffs' Claims**

For the first time, in this motion for reconsideration, plaintiffs argue that even if their state law claims based on a failure-to-warn theory are preempted, their claims may nonetheless survive summary judgment to the extent they are based on allegations unrelated to Paxil's labeling and FDCA requirements.  Plaintiffs now assert their complaint states claims based on the following: GSK fraudulently marketed and promoted Paxil as safe and effective to doctors and the public; GSK was negligent and is strictly liable for failing to conduct proper and adequate testing of Paxil; GSK breached its express warranties; and, finally, plaintiffs suffered severe emotional distress as a consequence of being present at the scene of their son's suicide attempt and resultant death.  (Pls.' Mot. at 13-14.)

Plaintiffs did not raise this argument in opposition to GSK's motion.  GSK moved for summary judgment on all of plaintiffs' claims, arguing they were each preempted because they were fundamentally anchored upon plaintiffs' allegation that GSK failed to warn of an increased risk of suicidality in Paxil's labeling.  Plaintiffs' briefing in opposition reflects that they understood that all of their claims were subject to GSK's motion.  (See e.g. Pl.'s Opp'n at 1, 14.)  Indeed, the Order states that only as a "final, alternative argument" did plaintiffs assert

11

there is no direct conflict in this case because "their claims are not limited to Paxil's warning labeling, but extend to 'promotion, advertising and Dear Doctor letters.'" (Order at 31-32.) In rejecting this argument, and plaintiffs' sole reliance on an out-of-circuit district court opinion, the court made clear that this argument was likewise premised on "labeling," which under the FDCA and FDA definitions include all hard-copy promotional material "upon" or "accompanying" the drug, as well as the package insert for the drug, and everything from booklets to calendars, if the material is textually related to the drug. (Order at 32.)

At no time did plaintiffs assert their state law claims were not derived solely from a failure to warn theory premised on the drug's labeling. As their present argument was not raised previously, it cannot serve as a basis for reconsideration, and the court may properly deem the argument waived. Kona, 229 F.3d at 890; 389 Orange Street Partners, 179 F.3d at 665 (9th Cir. 1999); Glavor v. Shearson Lehman Hutton, Inc., 879 F. Supp. 1028, 1033 (N.D. Cal. 1994) (recognizing that if a party simply inadvertently failed to raise the arguments earlier, the arguments are deemed waived).

However, this court does not deny reconsideration solely based on waiver. Rather, the court considers the merits of plaintiffs' argument likewise unavailing. Plaintiffs' newfound protestations that their claims "have nothing to do with the [Paxil] label or FDCA requirements, but involve GSK's representations and warranties to the public and GSK's own independent testings," are flatly contradicted by their

12

complaint. (Pls.' Mot. Reconsid. at 14:15-17.)  As pled therein, plaintiffs' claims are all derived from GSK's alleged failure to warn:  (1) plaintiffs' negligence claim alleged that GSK "knew or should have known that [Paxil] was a substance associated with preoccupation about and acts of self-harm" (Compl., ¶ 27); (2) plaintiffs' strict liability claim alleged that "U.S.-marketed Paxil was not accompanied by complete and proper warning for safe, informed use; the labeling . . . did not warn physicians . . . . the labeling failed to adequately inform physicians" (Id. at ¶ 36); (3) plaintiffs' breach of express warranty claim alleged that GSK sold Paxil "without a complete disclosure of Paxil's side effects" and that "GSK knew or in the exercise of reasonable diligence should have know that Paxil had the serious side effects set forth [in the Complaint] and was not efficacious for the treatment of pediatric patients" (Id. at ¶¶ 44-45); (4) plaintiffs' fraud claim alleged that "misleading information [material to prescribing decisions], along with omissions of material facts related to Paxil's safety and effectiveness, cause health care providers, patients and the general public to be misled about Paxil's risks" and that plaintiffs "were unaware of the falsity of said representations and/or omissions" (Id. at ¶¶ 51, 54); and (5) plaintiffs' claim for negligent infliction of emotional distress alleged damages as the "result of the [above] wrongful and negligent conduct" of GSK (Id. at ¶ 62).[8]

---

[8] See also Compl. at ¶ 17 ("GSK did not warn the public and the healthcare community of the risk of akathisia or suicide before Decedent's suicide."); ¶ 21 ("FDA regulations have required GSK to issue stronger warnings whenever there existed
(continued...)

13

As such, each of plaintiffs' claims is encompassed within this court's preemption ruling. See e.g., Riegel v. Medtronic, Inc., 128 S. Ct. 999 (2008) (affirming finding that federal law preempted breach of implied warranty; negligence in the design, testing, inspection, distribution, labeling, marketing, and sale of the product; negligent manufacturing not premised on theory that defendant violated federal law; and loss of consortium claim because it was derivative of preempted claims); Dobbs v. Wyeth Pharms., 2008 WL 169021, at *13 (W.D. Okla. Jan. 17, 2008) (claims for strict liability, negligence, and misrepresentation preempted); Colacicco v. Apotex, Inc., 432 F. Supp. 2d 514 (E.D. Pa. 2006) (claims for breach of implied warranty, fraud, violation of New York consumer protection act, intentional and negligent infliction of emotional distress, negligence, negligence per se, negligent misrepresentation, strict liability, wrongful death, survival action, and punitive damages preempted). Plaintiffs cannot now avoid that result by making post-hoc assertions that their claims are not premised on GSK's alleged failure to warn through Paxil's labeling.[9]

---

[8](...continued) reasonable evidence of an association between a serious risk and Paxil."); ¶ 22 ("GSK has the knowledge, the means, and the duty to provide [Benjamin Bratt's] doctor and the consuming public with a stronger warning regarding the association between Paxil and suicidality . . . .").

[9] Because the court makes this finding, it does not reach the parties' arguments as to whether plaintiffs' claims are otherwise cognizable, assuming arguendo that they were not preempted. (See Pls.' Mot. at 14-15; Def.'s Opp'n to Mot. Reconsid., filed March 11, 2008 [Docket #184], at 16-18.)

**CONCLUSION**

For the foregoing reasons, the court finds no grounds to reconsider its Order granting summary judgment for GSK on the basis of preemption, and accordingly, plaintiffs' instant motion for reconsideration is DENIED.

IT IS SO ORDERED.

DATED: April 10, 2008

FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE